Good morning, Your Honor. My name is Amelia Gerlacher, and I represent Daniel Javier Solando. Mr. Solando is a gay man with significant health issues, and he has not yet had a court review his claim under the proper legal standards. The BIA erred when it affirmed the denial of Convention Against Torture Relief because it limited relief to open and notorious homosexuals, contrary to the law of the circuit and the facts of this case, and because it applied the improper standards of specific intent to the facts before it. When the proper standards are applied to the facts of this case, substantial evidence compels the conclusion that Mr. Solando faces the likelihood of serious harm and death committed with the blessing of the Honduran government. The BIA cannot condition relief on whether an alien can be identified as homosexual, but the BIA did just that when it said that Respondent has not established that it is more likely than not that he would be identified as a homosexual. Let me say, in the record, can you point me to anything in the record that anyone in Honduras, whether in the government or a private individual, intends to torture Mr. Solando? Mr. Solando hasn't been in Honduras for 35 years, so I can't point to anything in the record that says that they know about him or that they have a specific intent to torture him, but that's not required under the standards for cat relief. There is significant evidence in the record that homosexuals face the beatings, death, rapes, killing, both from private animals. Well, one of the things that the BIA talks about, and I'm not sure you make this distinction, is the BIA found that violence in Honduras is primarily directed against gay rights activists and transsexuals. Is there any evidence of violence against homosexuals who are not activists like Mr. Solando? There is significant evidence of that, Your Honor. The State Department report says that gay men and women regularly experience abuses, beatings, killings, and other physical and verbal mistreatment from authorities. The Amnesty International report says that gay and lesbian individuals experience discrimination and attacks on a daily basis. What happens is that the government acquiescence on that, what's the evidence of that? Hold on just a second, Your Honor. The State Department reports also talk about significant anti-gay discrimination by security forces and that due to intimidation and fear of reprisal, victims of abuse are reluctant to file charges or proceed with prosecutions. Several organizations have compiled lists of murders of gay men and transvestites, most of which are never investigated or resolved. The State Department reports also indicate that security officials have condoned rapes and other physical assaults on detainees who are homosexuals. The government's attitude is widely considered to be an attitude of complete indifference, as in the INS report as well. And what happens in the record is that a number of the specific news reports are of notorious or salacious cases that come to the interest of reporters there and which are accessible here to the publications that we can find. But if you look at the survey reports that are attempting to show what conditions are generally, those don't make a distinction generally between gay rights activists or the rest of the homosexual population. And that's why when the BIA required him to be identified as a homosexual, that was factual on this record. There's not support for distinction there. It's also legal error because Karawani forbids requiring aliens to suffer the Hobson's choice of torture or a life of celibacy. Well, you seem to allege some sort of a hybrid claim that he's gay and he's ill and that, you know, but I'm not sure what sort of on the hybrid part of it, what sort of link is there that someone would target him because he's gay and then he wouldn't get – that would be a private actor and then he somehow wouldn't get medical treatment for whatever happened. Well, I mean, there's kind of three words that describe your client, gay, sick, and a criminal. I mean, he's got all of those three things, you know, and part of his criminal activity is what has, you know, put him out of a possibility for, you know, he's not eligible for removal or asylum or any of those things. So Kat's really his only hope, right? That is true. Well, being gay puts him at significant risk just by itself. It also – and because he is sick, it increases the risk that someone's going to find him a good target. Well, if he were only gay – Yes. Do you have a claim? Yes. If he were only sick, do you have a claim? After VA, I guess probably not. Okay. If he's sick and gay, do you have a better claim or is it the same as that he's gay? It's a better claim because it increases the risk that he is going to be attacked in the first instance. It increases his exposure or it increases the ways in which people he will then be exposed to, for example, in the hospital system, to torture him. And it also increases the ways in which people can torture him if he is, for example, detained, as many gay men are, merely because they're gay and on the streets of the city. I'd like to take a – speak also about the standards of specific intent that the BIA applied. They gave that as one of the primary reasons that they denied relief, but the reasoning they used to support their denial is contrary to the facts and the law in this case. They first said that we didn't show that the health system was created with the intent to inflict harm, but we didn't attempt to show that, so that's not really relevant to that denial. They also said that there was no evidence that the Honduran government turned a blind eye with specific intent to do harm, but that standard was improper because acquiescence and specific intent are alternatives under the statute under which Mr. Solando can get relief, as we discussed a minute ago. He can get relief either if private actors are torturing him with the acquiescence of the government or if government actors are torturing him in the first instance. In this case, there's a risk that both will happen. Kagan is it correct that essentially your position is that any gay individual will be able to make a claim under CAT if they are going to Honduras? Under – if they have this record, and then, yes, because the government has not put in any record in this case. You don't need to reach that decision. You don't need to say that, because, first of all, he has – he's at significant additional risk because of his health, and second of all, because you need to remand to the BIA to apply that – to analyze his case under the proper standards. But if – if an immigrant has this kind of record that shows that it's more likely than not that he's going to be tortured, then that is what courts – But what is your – what does he have in the record that any other gay person wouldn't? Because, you know, in the recent future, you're not dealing with anyone targeting him. You're dealing with just specific comments that being gay is a problem. Well, if someone else has our record, then they are entitled to relief. We put in a significant amount of uncontested evidence. I think what Judge Lynn says is why – it would seem that the standard that you're arguing means every gay person would be eligible for relief under CAT. If the BIA applies the proper standards to this record, which indicates, yes, that gay people are – in Honduras are more likely than not subject to torture. So that would be every gay person. If – yes. But that's not unusual for the court – for a court of appeals in this position to send it back to the BIA to make that finding. That's what happened in Brumfield. That's what the Third and Seventh Circuits have done in similar cases as well. But that's the law of CAT. But what I'm trying to sort of ferret out here is you're arguing that based on the general record, separating out everything specific to your client, you would still be arguing that the record demonstrates that because he's gay and therefore every other gay person with that record, general record, not specific to the individual, would be entitled to relief under CAT. That's what CAT says, that if they are subject to – if a person is more likely than not to be tortured when they return to their home country, then they are subject  And that's what you're arguing. Is there a Ninth Circuit case that holds the proposition that you're arguing? That's – this case is very similar to Brumfield on those facts. And that's why I said you don't have to reach this. What you need to do is send it back to the BIA to look at it under the proper standards of evidence. In Brumfield, it was a Jamaican immigrant who was claiming, purely based on State Department reports that appear to be very similar to the reports here, that he would be tortured if he returned to Honduras. And I'm going to reserve the remainder of my time. Thank you. May it please the Court. Tiffany Walters Kleiner, appearing on behalf of Respondent, the United States Attorney General. Solando seeks protection under the Torture Convention, which is the sole form of relief or protection for which he's eligible due to his kidnapping conviction. Solando claims that the likelihood of violence against him based on his homosexuality combined with his health conditions and the inadequacy of health care in Honduras would lead to a situation where he would be tortured. The agency denied his claims, and Solando petitioned for review. Why don't you go to Brumfield? Since that, I think that we focused on some level what appellant is claiming. And in Brumfield held that based on State Department reports that the Jamaican government was involved in the torture of gay men under CAT. How is this case different from Brumfield? Because essentially, I think she's arguing that any gay person. Most significantly, it's different in that before the board, petitioner did not argue that any gay person would be tortured. Before the board, petitioner presented a tripartite claim based on his health conditions and based on the availability of medical care combined with the violence against homosexuals, and that's the claim the board addressed in its decision. The board acknowledged that there is discrimination and violence, but never reached the question of whether or not all gays in Honduras would be tortured on the claim. So if they thought that all gays in Honduras would be tortured, wouldn't they have granted them relief? That wasn't the argument raised by Solando at that point. All I can say is that the board did not address that claim in its decision. What the board did address was that Solando's claim that somehow his medical condition and then that his inadequacy in medical care, as a result of that, any attack would have torturous consequences, that that lacked the specific intent. Can you just help me? Sure. His medical problems, are they related to his being gay? I don't believe so. It sounds to me like it's heart conditions and diabetes. I'm sure Petitioner's counsel could better speak to this, but it seems to be general ill health. But your position is he's not arguing that he is subject to torture merely because he's gay and that it would be worse because he's gay? That's the way I read it. In other words, you seem to be saying now that it's both or nothing, as opposed to gay plus health issues. And that's not the way I read it. And so if it's both issues or alternatively, he's either going to be tortured because he's gay or because he's gay and ill. I think counsel conceded it's not just because he's ill. And therefore, don't we have to address the question of whether the record establishes that all gay individuals, obviously including him, would be subject to torture? And that is the record before the BIA based on the reports, Amnesty International and the State Department reports. Certainly. But the board in its decision did not specifically address that. It denied the claim on both the specific intent component, which was based on the three-part claim that Petitioner raised, and based on the identifiable issue, which was that he failed to demonstrate that he would be both – that he would be identified as a homosexual and targeted as a result. Well, then don't we need to send it back to the BIA to determine if, based on his being gay, he's subject to torture? If this Court finds that it was adequately exhausted before the board, it would need to be sent back for the board to address it in the first instance. Okay. So your position depends solely on his not – with respect to his being gay depends solely on his not having exhausted it? The board simply hasn't addressed the evidence in the record, and so I can't argue it in the first instance before this Court without the board having ruled on whether or not that evidence. Well, is it a position that he – that the board didn't rule on or he didn't exhaust it? He didn't exhaust it. In fact, if you look to the record at page 20, his brief before the board specifically says that I'm not arguing that it's simply because he's gay, but instead I'm creating this tripartite claim. And that brief was filed post-Villegas, and Petitioner did not address how Villegas affected his claim. And the board essentially viewed this as the tripartite claim that Petitioner raised and found that Villegas required specific intent. And under this tripartite claim, there was no specific intent by any party whatsoever. What about on – what's the evidence regarding government acquiescence to actions by private individuals? Again, I would say that the board addressed that in two respects. The board addressed in terms of whether or not it was willfully blind to the health conditions, the inadequacy of medical care in Honduras. And there it's clear that the government of Honduras is taking steps to ameliorate the conditions with the health system. As far as willful blindness to crimes committed by others against homosexuals, the board only addressed that in the context of specific intent, and not in that specific intent and willful blindness must both be demonstrated in the claim. But the board was addressing whether or not Petitioner had demonstrated specific intent by any party. And as part of that analysis, the board considered whether or not the acquiescence of the government of Honduras, if it occurred, would be whether that demonstrated specific intent in terms of being willfully blind to the crimes of others. And there the board found that the record did not support that conclusion. Back to my claim. In addition, I just wanted to point out, as part of the record, that the Court has denied Solando's request for a stay of removal, and as a result, he was removed on March 18, 2009, to Honduras. I would also like to point out that the board's decision hinged both on specific intent and on the merits. Kagan. Was there a motion to stay in this court? There was a motion to stay, and the Court denied it on December 4, 2008, because there was no serious legal question or likelihood of success on the merits. I would present that the board both denied Solando's claim based on the lack of specific intent and also on his failure to demonstrate that he'd be identifiable and, as a result, more likely than not tortured. These are alternative holdings, and either one would be sufficient. Well, the last substantive paragraph of the board's order is focused exclusively on this question of whether he would be identified as homosexual and whether he was a gay rights activist, transsexual worker, or member of any other category of homosexuals more targeted for violence. It doesn't talk at all about his health condition. No. And counsel is arguing that this, in effect, holds that he has to be a closeted homosexual. And it is subject to that interpretation. I'd like to hear your response to it. I believe with the board, under the foreclaim for convention against torture, Solando bears the burden of demonstrating that he would be more likely than not tortured. And if his claim is based on the fact that he would be tortured as a homosexual, he has to demonstrate somehow that people would be able to identify him and torture him as a result. I don't think the board is saying that he has to remain closeted or that he has to be open. I think he just needs to articulate how it is that someone's going to identify him and target him as a result, and that just goes to the basic burden of proof. Well, the evidence says that he's an open homosexual. I mean, you're not suggesting he has to wear a sign. So what else would he have to do other than affirm that he is openly gay? Because the argument that's being made, when I first read the brief, I thought, well, that clearly can't be what the board was saying. But this last paragraph is subject to that interpretation. And the reports don't make this distinction between open and closeted. So all of those people subject to torture in Honduras, someone found out that they were gay. Is it enough for him to say he's openly gay? I think that is, in a way, a label, and so it would be more helpful to explain what that means in terms of would you join gay organizations, would you affiliate with gay individuals, just to describe certain facts or actions he might take that would make him identifiable. Well, it's kind of hard now that we've had this public proceeding here for him to crawl back into the closet when he's back there, isn't it? Certainly. Again, I think the board in that case was also looking to the record generally in terms of the record. Well, and the record indicated that he had children and he had lived he'd been in a relationship for 14 years. So there's not an adverse credibility finding that he's not gay. Certainly. But the court seemed, but I guess the BIA seems to be saying that they're sort of talking about the life that he's lived has at times been in gay relationships at times in heterosexual relationships. And I think the board also did point to the fact that he testified that he left Honduras to avoid being discovered as gay. So I think the board was also looking to the fact that he may not have held himself out as an open homosexual prior to leaving Honduras. I don't believe that the board was requiring that he hold himself as an open homosexual. I believe that the board required that he articulate how it was that he was going to be more likely than not identified and more likely than not targeted as a result or tortured as a result. So I think, actually, I believe my time is up. It is. Any further questions? Thank you, Your Honor. Thank you. Your Honors, I'd just like to touch briefly on a couple of things, unless you have specific questions, of course. First, he can't be expected to present evidence that when he goes back to Honduras he's going to perform certain actions that will make him identified as gay. He's supposed to show that he's too stereotypical to hide. Sexuality is a fundamental aspect of one's identity. And he's being expected to hide that from the entire population. Well, no, but he has to show that he would be likely to be persecuted. Yes. And there are cases where people identify that there are certain people that will still be there or that, you know, that authorities have been coming around looking for them or any number of things. I mean, his case is not one of those. I mean, the record, his claims tend to be more of a general nature as opposed to a specific nature. That's true. And he does have to show, and I believe we've shown it, that when he is identified as being gay, which in the normal course of life he will be, that he is more likely than not to be tortured. Which leads to my the second thing I was going to address was whether we argued that he would be tortured because he was gay. Well, of course we did. There's significant evidence in the record that gay people are tortured, and there's unfortunately very little evidence as to the health conditions of most of them. We put that evidence in the record because we believe it was more likely than not that he was gay. And when we say that our claim is not just based on that, that's true. But that doesn't mean that he wouldn't be subject to torture if that were the case. Well, let me just – I know you're in overtime, but I just want to ask this question. You know, counsel for the government has indicated that you didn't really make the argument that just because he's – you know, that all gay people are going to be tortured, and that does seem to be true when you look at the record. It seems that we would be reviewing this record for substantial evidence on each of the findings that the BIA did make, which is not exactly – they didn't – it wasn't every gay person will be tortured. Which is why you need to send it back to the BIA for them to apply the proper standards to the evidence. Thank you. Thank you. The case just argued is submitted for decision.
judges: Lynn, Schroeder, Callahan